Zimmerman, J.
Section 2915.111, Revised Code, recites: “No person shall own, possess, have on or about his person, have in his custody, or have under his control a ticket, order, or device for or representing a number of shares or an interest in a scheme of chance known as ‘policy,’ ‘numbers game,’ ‘clearing house,’ or by words or terms of similar import, located in or to be drawn, paid, or carried on within or without this state.
“Whoever violates this section shall be fined not more than five hundred dollars and imprisoned not more than six months for a first offense; for each subsequent offense, such person shall be fined not less than five hundred nor more than one thousand dollars and imprisoned not less than one nor more than three years.”
It has been held that where the violation of a criminal statute carries a penalty of a substantial fine and imprisonment for a period of one or more years and the person convicted under the statute is sentenced to the penitentiary, his offense is classed as a felony. Ex parte Thorpe, 66 Ohio App., 128, 32 N. E. (2d), 571, affirmed, 137 Ohio St., 325, 30 N. E. (2d), 335. See, also, In re Thorpe, 132 Ohio St., 119, 5 N. E. (2d), 333, and Smith v. Alvis, Warden, 72 Ohio Law Abs., 267, 268, 134 N. E. (2d), 868, 869.
The Cleveland police had good reason to believe that defendant was regularly engaged in carrying on a scheme of chance involving clearinghouse slips. There was testimony that he had previously been convicted on that score. Information was given to the police by an informer that defendant would be in a certain locality at a certain time pursuing his unlawful activities. He was found in that locality, as predicted, driving an automobile. Police officers stopped the car and searched it, *75 without result. Defendant was then arrested and taken to a police station, and his clothing was examined, resulting in the discovery and seizure of the illegal clearinghouse slips, which formed the basis of the charge against him and his subsequent conviction.
In response to questions asked him by counsel for the defendant, one of the arresting officers testified as follows:
“A. I heard reports and found that he [defendant] has a record in connection with clearing house and scheme of chance.
“Q. Previous convictions? A. Yes.”
Although there are a number of errors assigned by defendant, only two are of real importance:
1. Were the clearinghouse slips obtained by an illegal search and seizure, so as to render erroneous the refusal of the trial court to sustain the motion to suppress?
2. Did the trial court err in refusing to order the police to disclose the identity of the informer?
The search herein took place as an incident of an arrest, and it has been held that a search which is incidental to a valid arrest does not constitute an unreasonable and illegal search. Harris v. United States, 331 U. S., 145, 91 L. Ed., 1399, 67 S. Ct., 1098.
Defendant was arrested, without a warrant, for what an arresting officer believed and had probable cause to believe was the commission of a felony (Section 2915.111, Revised Code). In the circumstances, then, was such arrest valid? Section 2935.04, Revised Code, describes when an arrest may be made without a warrant and reads as follows:
“When a felony has been committed, or there is reasonable ground to believe that a felony has been committed, any person without a warrant may arrest another whom he has reasonable cause to believe is guilty of the offense, and detain him until a warrant can be obtained.”
Next, was there probable cause for making the arrest? “Probable cause” is incapable of any exact definition applicable to all cases. However, the Supreme Court of the United States said in Henry v. United States, 361 U. S., 98, 102, 4 L. Ed. (2d), 134, 80 S. Ct., 168:
‘ ‘ Probable cause exists if the facts and circumstances known *76 to the officer warrant a prudent man in believing that the offense has been committed.” See, also, Draper v. United States, 358 U. S., 307, 3 L. Ed. (2d), 327, 79 S. Ct., 329.
Therefore, a question of fact is presented in each case, and where the facts in the possession of the police are sufficient to cause a reasonable and prudent man to believe that a felony has been committed and that the accused committed it, probable cause is present.
In the hearing on the motion of defendant to suppress, an arresting officer testified that the arrest was made on the basis of information supplied by an informer, coupled with knowledge of defendant’s prior history. Here, there was not an arrest merely for an exploratory search. According to the testimony, the police, based on the information they had, were actually looking for the defendant for the purpose of arresting him.
In the present case, the knowledge of the police was predicated partly on information furnished by an informer. This raises the constantly recurring question as to what extent officers may rely and act on that kind of information. Of course, to justify an arrest a police officer need not observe the actual commission of a crime, and it is a matter of common knowledge that law-enforcement officers frequently and necessarily act on information supplied by others and on occasion on “tips” coming from informers.
Did the court err in refusing to compel the disclosure of the name of the informer? Defendant contends that he was entitled to such disclosure to test the credibility of the informer and the reliability and sufficiency of the evidence on which the officers proceeded.
As already noted, law-enforcement officers sometimes base a part of their activities on information supplied them by informers, and the only way to verify the reliability of such information is to make use thereof. Informers often frequent the vicinity where crime is planned, and the revelation of an informer’s name would not only destroy his access to information concerning criminal activities but might also result in his sudden demise, thereby discouraging others from becoming informers.
For many years, sound policy has dictated that the names *77 of informers be kept secret. Only in an instance where an informer’s identity would be beneficial and helpful to a defendant is there any basis for requiring disclosure. Here the officers acted on the information imparted by the informer plus additional knowledge already in their possession. The revelation of the name of the informer and the information supplied by him would not alter the fact of defendant’s guilt. And a mere desire to test the credibility and reliability of the informer is hardly a compelling consideration in the circumstances narrated.
This case is distinguishable from that of Roviaro v. United States, 353 U. S., 53, 1 L. Ed. (2d), 639, 77 S. Ct., 623, where the informer not only gave information but took an active part personally in trapping and apprehending the offender. No such situation is evident here.
Finally, nothing in the present case shows that the disclosure of the name of the informer would have been of any real value to defendant. He made no active defense, and by stipulation the case was submitted to the court solely on evidence furnished by the police and introduced at the hearing on the motion to suppress.
We conclude that the search and seizure herein without a warrant was justifiable and did not violate defendant’s constitutional rights, and we find no prejudicial error in the refusal of the trial court to require the disclosure of the identity of the informer.
Accordingly, the judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Matthias, O’Neill, Griffith and Herbert, JJ., concur.
Taft, C. J., and Gibson, J., dissent.